UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NANCY YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-07-CV-0546 XR (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   Honorable Xavier Rodriguez
      United States District Judge

### Introduction

Plaintiff Nancy Young brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Young is not disabled for the purposes of the Social Security Act (the Act) and denying Young's application for Supplemental Security Insurance (SSI) benefits. Young asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Young asks the district court to reverse the decision and remand the case for further proceedings.

After considering Young's brief in support of her complaint,[1] the brief in support of the

---

[1] Docket entry # 13.

Commissioner's decision,[2] Young's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Young exhausted her administrative remedies prior to filing this action in federal court. Young applied for SSI on August 26, 2004, alleging disability beginning June 1, 2002.[5] Although she did not identify a triggering event or condition for this date, it appears to be linked to the loss of her job after her employer had a heart attack and closed his business. Young based her allegation of disability on back pain, hand surgery, Crohn's

---

[2]Docket entry # 17.

[3]Docket entry # 15.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 53.

disease,[6] nerves, fibro-cystic disease and ulcers.[7] The Commissioner denied the application initially and on reconsideration.[8] Young asked for a hearing before an administrative law judge (ALJ).[9] An ALJ held a hearing on October 5, 2006[10] and issued a decision on April 27, 2007, concluding that Young is not disabled within the meaning of the Act.[11] Young asked for review of the ALJ's decision.[12] The SSA Appeals Council denied the request for review on June 13, 2007, after determining that no basis existed for reviewing the ALJ's decision.[13] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's

---

[6]A description of "regional enteritis"—commonly called Crohn's disease—follows:

An inflammation of the small intestine, frequently involving only the last 12 to 14 inches, but occasionally affecting other parts of the small intestine or extending into the colon (large intestine). . . . Clinically, the condition is accompanied by crampy abdominal pain, diarrhea, anorexia (loss of appetite), and loss of weight.

Pathologically, the disease is marked by patchy (here and there) inflammation, deep ulcers which may bore through the wall of the intestine and form fistulas, a narrowing of the lumen (interior diameter) of the intestine by fibrosis (invasion or overgrowth of fibrous tissue), and an influx of lymphocytes (certain white blood cells).

J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 5-R 1495 (Matthew Bender 2005).

[7]SSA record, at p. 61.

[8]*Id*. at pp. 40-41.

[9]*Id*. at p. 38.

[10]*Id*. at pp. 188-214.

[11]*Id*. at pp. 10-20.

[12]*Id*. at p. 8.

[13]*Id*. at p. 4.

review pursuant to 42 U.S.C. § 405(g). After receiving leave to proceed in forma pauperis,[14] Young filed this action on July 7, 2007, seeking review of the Commissioner's decision.[15]

## Issue Presented

Is the ALJ's decision that Young was not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[16] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[18]

If the Commissioner's findings are supported by substantial evidence, then they are

---

[14] Docket entry # 3.

[15] Docket entry # 4.

[16] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[17] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[18] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

conclusive and must be affirmed.[19] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[20] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[21] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[22]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[23] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[24] A claimant shall be determined to be disabled only if her physical or

---

[19]*Martinez*, 64 F.3d at 173.

[20]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[21]*Martinez*, 64 F.3d at 174.

[22]*Id*.

[23]42 U.S.C. § 1382(a)(1) & (2).

[24]42 U.S.C. § 1382c(a)(3)(A).

mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[25]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[26] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[27]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[28] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[29] The second step involves determining whether the claimant's impairment is severe.[30] If it is not severe, the claimant is deemed not disabled.[31] In the third step, the Commissioner compares the severe impairment with

---

[25] 42 U.S.C. § 1382c(a)(3)(B).

[26] 20 C.F.R. §§ 404.1520 and 416.920.

[27] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[28] 20 C.F.R. §§ 404.1520 and 416.920.

[29] *Id*.

[30] *Id*.

[31] *Id*.

those on a list of specific impairments.[32] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[33] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[34] If the claimant is still able to do her past work, the claimant is not disabled.[35] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[36] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[37] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[38] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[39]

---

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]*Leggett*, 67 F.3d at 564.

[38]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[39]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. At step one, the ALJ determined that Young had not engaged in any substantial gainful activity since her alleged onset date.[40] At step two, the ALJ determined that Young has the following severe impairments: history of back surgery, history of Crohn's disease, depression and anxiety.[41] At step three, the ALJ determined that Young's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[42] At step four, the ALJ determined that Young has the following residual functional capacity—Young can: lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours out of 8 hours with normal breaks, and sit 6 hours out of 8 hours with normal breaks. Young must avoid significant unprotected heights, potentially dangerous, unguarded moving machinery, and commercial driving. Young must work in a low stress work environment, have ready access to a lavatory, work at simple repetitive tasks, and have minimal contact with the public. The ALJ determined that Young can perform light work.[43] The ALJ also determined that Young cannot perform past relevant work and Young has no transferrable job skills.[44] At step five, the ALJ determined that a significant number of jobs exist in the national economy that Young can perform and concluded that Young is not disabled under

---

[40]SSA record, p. 15.

[41]*Id*.

[42]*Id*. at p. 16.

[43]*Id*. at p. 18.

[44]*Id.* at p. 19.

the Act.[45]

## C. Young's Allegations of Error

In July 2005 after her application was denied, Young reported that her "nerves are getting worse and very stressed over health [and] losing everything."[46] Despite receiving treatment for depression and anxiety beginning in December 2005, Young testified in October 2006 that her concentration was getting worse.[47] She explained that she gets confused and doesn't finish tasks.[48] In this lawsuit, Young contends the ALJ failed to mention her treating psychiatrist's findings,[49] complaining that her psychiatrist consistently rated her as functioning at 6 on a scale of 10, with impaired concentration and memory.

The ALJ specifically addressed the medical records provided by Young's treating psychiatrist. The following passage refers to those records:

> Records show [Young] receives regular mental health treatment and is treating her depression/anxiety with appropriate medications. Indeed, it appears that this treatment is beneficial because clinic notes show she is cooperative, with clear sensorium, intact orientation and memory, coherent and spontaneous speech, logical and goal directed thought processes, and appropriate affect.[50]

This passage is supported by the record. Nothing in the records provided by Young's psychiatrist indicates problems with concentration or memory. That she operates with some level of

---

[45]*Id.*

[46]*Id.* at p. 94.

[47]*Id.* at p. 203.

[48]*Id.*

[49]Docket entry # 13, p. 7.

[50]SSA record, p. 18.

9

impairment is undisputed. The ALJ's findings about Young's residual functional capacity incorporates those impairments—*i.e.*, Young must work in a low stress work environment, work at simple repetitive tasks, and have minimal contact with the public.[51] The ALJ did not fail to address Young's treating psychiatrist's findings.

Young also complains that the ALJ did not address records from her treating physician in Indiana.[52] This complaint refers to Dr. Robert J. Kunz who treated Young when she lived in Indiana and who saw Young periodically after she moved to Texas in 2002. The record contains reports of three annual visits that occurred after Young moved to Texas and before Young applied for disability benefits. Young does not explain why the ALJ's consideration of those reports was harmful, except to vaguely suggest that the reports contradict the evaluations of consulting physicians.[53] But Young has not shown that she was prejudiced by the ALJ's alleged failure to address Dr. Kunz's reports. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'"[54] Dr. Kunz's reports are consistent with the ALJ's determination about Young's residual functional capacity. In April 2002, Dr. Kunz reported that Young wasn't having any significant problems from her Crohn's disease, but opined that she might have irritable bowel syndrome.[55] Dr. Kunz doubted Young's complaints of stomach pain, diarrhea, and black stools were related to Crohn's

---

[51]*Id.* at p. 16.

[52]Docket entry # 13, p. 7.

[53]Docket entry # 13, p. 7.

[54]*Brock v. Chater*, 84 F.3d 726, 728 5th Cir.1996).

[55]SSA record, p. 118.

disease.[56]  Dr. Kunz reported that Young has a history of peptic ulcer disease and advised Young to quit smoking because smoking can irritate peptic ulcer disease.[57]  In March 2003, Dr. Kunz attributed Young's complaints about stomach cramping to irritable bowel syndrome and opined that he did not believe Young's Crohn's disease was reoccurring.[58]  He attributed Young's complaint about dyspepsia (indigestion) to stress.[59]  Finally, in January 2005, Dr. Kunz reported that Young looked good, Young was not having any gastrointestinal problems, and Young's Crohn's disease was not a problem.[60]  A detailed discussion of these reports would not have adduced evidence that might have altered the result in this case because the reports predate Young's application and do not show that Young cannot work.  In fact, Young was working when Dr. Kunz made the reports.

Young maintains the ALJ erred in assessing her residual functional capacity.[61]  She complains that the ALJ determined that she had a moderate to marked limitation in concentration, persistence, and pace, but the ALJ did not include that limitation in his hypothetical question to the vocational expert.  Because the vocational expert testified that a person with a marked limitation in concentration, persistence and pace would be unable to maintain employment, Young contends the ALJ erred by determining her residual functional

---

[56]*Id*.

[57]*Id*.

[58]*Id*. at. p. 107.

[59]*Id*.

[60]*Id.* at pp. 105-06.

[61]Docket entry # 13, p. 8.

capacity.

A proper hypothetical question posed to a vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ.[62] Here, the ALJ was not required to incorporate a marked limitation in concentration, persistence, and pace in his hypothetical question to the ALJ because the medical records show that Young improved with treatment. The ALJ explained as follows:

> The claimant alleges disability due to "nerves" and testified that she is unable to work because she cannot concentrate. Although the claimant had significant problems on intake at Hill Country MHMR Center on December 7, 2005, she responded well to medication, and treating notes consistently show intact memory and concentration. Based on her review of the evidence, the medical expert, a board certified psychiatrist, testified that the claimant has some problems with concentration but has the residual functional capacity to perform work involving simple, repetitive tasks.[63]

As stated earlier, nothing in the records provided by Young's psychiatrist indicates problems with concentration or memory. Thus, the ALJ was not required to incorporate a marked limitation in concentration, persistence and pace in his hypothetical question to the ALJ. Instead, the ALJ was required to incorporate all disabilities supported by evidence and recognized by the ALJ.[64] The ALJ met that duty by incorporating the following limitation in his hypothetical

---

[62]*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

[63]SSA record, p. 19 (ALJ's record citations omitted).

[64]*See Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002); *Bowling*, 36 F.3d at 436.

question: "this person would be limited to low-stress work, low-stress work being defined as repetitive tasks with a minimum of decision-making, would have to involve simple, repetitive tasks, would have to involve minimal public contact. . . ."[65] The ALJ did not err.

Finally, Young complains that the ALJ didn't discuss the weight he gave to her testimony about having to use the restroom six times a day.[66] Young maintains that the ALJ's finding that she must have ready access to a restroom indicates the ALJ found credible her testimony that she could not work because her Crohn's disease caused her to go to the bathroom six times a day. The ALJ did not explicitly address that specific testimony, but the ALJ's opinion shows that the ALJ found the testimony less than credible. The ALJ characterized Young's statements "concerning the intensity, persistence and limiting effects of [her] symptoms [as] not entirely credible."[67] About Crohn's disease, the ALJ observed that Young had stated her last flare-up of Crohn's disease was over ten years ago and she denied gastrointestinal complaints except to occasional crampy abdominal pain.[68] The ALJ was under no duty to assign specific weight to Young's testimony that she had to go to the restroom six times a day.

Having addressed Young's allegations of error, the next question is whether substantial evidence supports the Commissioner's decision. All evidence supports the Commissioner's decision: (1) the disability physical examination conducted by Dr. Amer Alandari on December 12, 2004, reporting that no acute distress, no flare-up with Crohn's disease for ten years, normal

---

[65]SSA record, p. 210.

[66]Docket entry # 13, p. 8.

[67]SSA record, p. 18.

[68]*Id.*

bowel sounds, and no difficulty getting on or off of the examination table;[69] (2) the disability mental examination conducted by Dr. Arthur G. Bouton on January 4, 2005, diagnosing Young wtih major depressive disorder and reporting marginal judgment and fair insight;[70] (3) the psychiatric review technique prepared by Dr. Nancy Wilson on May 23, 2005, finding mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation;[71] the physical residual functional capacity assessment prepared by Dr. John H. Durfor on January 25, 2005, reporting that Young can lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday, sit with normal breaks for a total of about 6 hours in an 8-hour workday, and is unlimited in the ability to push and/or pull except as indicated for lift and/or carry;[72] testimony by the medical expert that Young is limited to work involving simple job instructions, low stress, limited public contact, no dangerous machinery and no commercial driving;[73] and testimony by the vocational expert about jobs in the national economy that a person with Young's limitations can perform.[74]  Substantial evidence supports the Commissioner's decision.  The ALJ made no error of law.

---

[69]*Id*. at pp. 111-12.

[70]*Id*. at pp. 114-17.

[71]*Id*. at p. 138.

[72]*Id*. at pp. 120-27.

[73]*Id*. at pp. 207-08.

[74]*Id*. at pp. 210-12.

### Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Young's request for relief (docket entry # 4) and AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[75]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[76]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking

---

[75] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[76] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[77]

**SIGNED** on July 21, 2008.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[77] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).